NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | : Hon. Faith S. Hochberg, U.S.D.J. |
| | : |
| | : Criminal Case No. 08-0775 (FSH) |
| v. | : |
| | : **OPINION & ORDER** |
| SADIQ CALLOWAY | : |
| | : |
| | : Date: April 18th, 2013 |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant Sadiq Calloway's Motion for a New Trial. [Docket No. 91].

**I.  Background**

On July 16, 2009, Sadiq Calloway was found guilty of three drug and firearms offenses, after a jury trial. On July 23, 2009, he penned a pro se letter to the Court, stating that he had been "diagnosed" in 2006 with "schizophrenic paranoia," and that his trial counsel had failed to inform the Court. Defendant claimed that he had been unable to fully participate in his trial and that he "repeatedly tried to block out the voices, but there were too many." He also informed the

1

Court that he was filing an ethics complaint against his court-appointed counsel. [Docket No. 39].

Following receipt of this letter, the Court appointed new counsel and permitted counsel to take all appropriate actions to inquire into Defendant's competency. As a result, the sentencing date was indefinitely adjourned until counsel had been fully able to conduct a thorough investigation of Calloway's competence. Defendant first had a psychological evaluation at the Bureau of Prisons Metropolitan Correctional Center in New York. The Court then allowed Defendant to be evaluated by two independent experts – one chosen by defense counsel, and one by the Government. [Docket Nos. 57; 58]. After these evaluations, the Court ordered Defendant committed to the care of the Attorney General pursuant to 18 U.S.C. § 4241(d) for the treatment necessary to determine whether he was competent to proceed to sentencing. [Docket No. 61].

Defendant was then sent to the Federal Medical Center in Butner, North Carolina ("FMC Butner"), where he underwent several months of evaluation. On January 5, 2012, mental health professionals at FMC Butner certified to the Court that Defendant was competent to be sentenced. [Docket No. 73 "FMC Butner Report"]. The Report stated:

> He has an adequate factual and rational understanding of his charges and possible outcomes in his case. Psychological test results and behavioral observations indicate he has an adequate cognitive level to understand the charges against him and related legal proceedings. Monitored telephone calls and behavioral observations over a lengthy evaluation period indicate he has an ability to assist his attorney in the preparation of his defense if he chooses to do so. Although largely uncooperative, he has demonstrated an adequate understanding of various facets related to his case and the possible outcomes.

(FMC Butner Report at 23).

Perhaps even more significantly for purposes of evaluating the instant motion, the Report found that Defendant "most closely meets criteria for the condition of malingering" and that "his historical presentation of self-reported psychotic symptoms can best be explained by personality

2

disorder traits." Id. at 21. It explained that "[a] personality disorder is a deeply ingrained pattern of behavior and thinking that occurs across contexts and interferes with an individual's interpersonal functioning or causes distress." Id. at 22.

During the multi-year process of investigating his competency, a pattern became apparent with respect to Defendant's relationship with his court-appointed counsel. After Defendant wrote his pro se letter right after he was convicted, as stated above, this Court appointed new counsel, taking care to select empathetic defense counsel with strong interpersonal skills. This Court first appointed Stacy Ann Biancamano, who had regularly appeared before the Court for over a decade in her former position as an Assistant Federal Public Defender. Ms. Biancamano has always shown the utmost humanity and interpersonal skill and patience in dealing with the challenges of her job. She valiantly endeavored to pursue every possible psychological lead and did a thorough investigation, including psychological experts that the Court authorized her to retain to defend Mr. Calloway. Unfortunately, after a cordial beginning for many months, as the investigation progressed toward a conclusion not to Mr. Calloway's liking, Ms. Biancamano became unable to obtain the civil cooperation of Mr. Calloway. She then asked to be relieved as court-appointed counsel. The Court granted her request and then again appointed new counsel for Defendant.[1] That counsel then completed the process of representing Mr. Calloway through the remaining psychological evaluations.

---

[1]	Defendant has had the benefit of three court-appointed defense counsel. His trial counsel was Joseph Donahue. The Court appointed Ms. Biancamano after receipt of Defendant's pro se letter. [Docket No. 47]. When replacement counsel submitted a motion indicating that the attorney-client relationship had deteriorated to such an extent that effective communication and representation was no longer possible, the Court appointed a third attorney to represent Defendant. [Docket No. 71].

After the conclusion of these evaluations, the Court held a hearing on whether Defendant was competent to proceed to sentencing pursuant to 18 U.S.C. § 4241. At that time, Calloway again sought a fourth appointment of new defense counsel. In an Opinion and Order dated May 31, 2012, the Court denied Defendant's request for another substitution of counsel and found him competent to proceed to sentencing. At the hearing, the Court asked defense counsel if he wished to call any witnesses, including the defense-retained expert psychologist. Mr. Anderson declined to call any witnesses, stating that he had no witness who could testify in opposition to the findings of competence and malingering (feigned symptoms) made by the Butner experts. Defendant's expert stated of the Report "that she [was] unable to refute its conclusion." See Docket No. 84; see also Opinion and Order of May 31, 2012 at 8 (that Opinion also notes that at the competency hearing regarding whether Defendant was competent to proceed to sentencing "Defendant opted not to testify, present evidence, or subpoena witnesses"). After reviewing the multiple psychological evaluations of Defendant, with particular note of the extensive report from the experts at FMC Butner, the Court stated: "[a] choice to be uncooperative and make oneself appear to be incompetent is not actual incompetence." The Court also gave Defendant leave to file a motion for a new trial. [Docket No. 87].

Defendant has now moved for a new trial pursuant to Federal Rule of Criminal Procedure 33(b)(2) on two grounds. First, he argues that there is a question about whether he was competent to stand trial in 2009, despite his current competence to proceed to sentencing. Second, he argues that his counsel at the time of trial provided ineffective assistance of counsel by (a) failing to request a competency evaluation prior to trial, (b) asking the jury in closing arguments to find Defendant "guilty," and (c) failing to adequately counsel Defendant about the benefits of accepting the Government's plea offer. (Mot. at 1).

4

## II. Standard of Review

Under Federal Rule of Criminal Procedure 33, a defendant's motion for a new trial may be granted "if the interest of justice so requires." Fed. R. Crim. P. 33(a). Defendant moves for a new trial under Rule 33(b)(2), which provides for a motion for a new trial "grounded on any reason other than newly discovered evidence."[2]

## III. Discussion

### a. Competence at the time of trial

"It has long been accepted that a person whose mental condition is such that he lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." Drope v. Missouri, 420 U.S. 162, 171 (1975). The conviction of a legally incompetent person violates due process. Pate v. Robinson, 383 U.S. 375, 378 (1966). When conducting an inquiry into a defendant's competence, a "court must examine the unique circumstances of the case and decide whether the defendant '(1) has the capacity to assist in her or his own defense and (2) comprehends the nature and possible consequences of a trial.'" United States v. Jones, 336 F.3d

---

[2] Under the version of Rule 33(b)(2) applicable at the time Defendant's pro se letter was filed with this Court, a motion for a new trial must be filed within seven days of the verdict. See Advisory Committee Notes to Fed. R. Crim. P. 33. Defendant's pro se letter, which this Court will interpret as a motion for a new trial, was received on July 30, 2009, and filed the next day. The letter therefore missed the deadline by eight days, and was untimely, although it was dated as being written within seven days of the verdict. Defendant argues that the delay was due to the prison mailing system. The Court may extend the time bar if the moving party "failed to act because of excusable neglect." Fed. R. Crim. P. 45(b)(1)(B). When determining whether the Defendant has shown excusable neglect, the Court must consider the danger of prejudice, the length of the delay and its impact on judicial proceedings, the reason for the delay, whether the movant had control over the delay, and whether the movant acted in good faith. In re Cendant Corp. PRIDES Litig., 234 F.3d 166, 171 (3d Cir. 2000) (citing Pioneer Inv. Servs. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 395 (1993)). In this case, because pro se Defendant's short delay was likely due to his incarceration and the prison mailing system, and because the delay did not prejudice the Government, the Court finds excusable neglect.

245, 256 (3d Cir. 2003) (citing United States v. Leggett, 162 F.3d 237, 242 (3d Cir. 1998)). There is no predetermined formula to use when considering this two-pronged test for competency. Leggett, 162 F.3d at 242. Among the factors a court may consider are evidence of the defendant's irrational behavior, his demeanor at trial, and prior medical opinions on competence. Id. The Third Circuit has observed that "'it does not follow that because a person is mentally ill [that person] is not competent to stand trial.'" Id. at 244 (quoting United States v. Davis, 93 F.3d 1286, 1290 (6th Cir. 1996)). "If the mental illness does not deprive the defendant of the ability to understand the proceedings rationally as well as factually, then the illness is irrelevant for the purposes of determining competency." Id. (internal punctuation and citations omitted).

If there is reasonable cause to believe that a defendant is incompetent to stand trial, a district court must hold a competency hearing either on motion from the parties or its own motion. 18 U.S.C. § 4241(a); Dusky v. United States, 362 U.S. 402, 402 (1960). A competency hearing is necessary if there is reasonable cause to believe the defendant is incompetent under either of the two prongs of the standard laid out in Jones. 336 F.3d at 256. The Third Circuit has explained that a retrospective competency hearing can be granted if the issue of competency is raised after trial has concluded and there is reasonable cause to believe the defendant was incompetent at the time of trial. Jones, 336 F.3d at 256-60; United States v. Renfroe, 825 F.2d 763, 766 (3d Cir. 1987). If no meaningful retrospective hearing is possible, a new trial must be granted. United States v. Haywood, 155 F.3d 674, 681 (1998) (citing Renfroe, 825 F.3d at 767-68)). If the Court holds a competency hearing, it must then determine by a preponderance of the evidence whether the defendant is competent to stand trial. 18 U.S.C. § 4241(d); see also Haywood, 155 F.3d at 680 (stating that "[s]ection 4241 provides a mandatory

process"). In the Third Circuit, the burden of proving competence rests with the United States. United States v. Velasquez, 885 F.2d 1076, 1089 (3d Cir. 1989); United States v. DiGilio, 538 F.2d 972, 988 (3d Cir. 1976).

After exhaustive consideration of the evidence before it, the Court finds there is no reasonable cause to believe Defendant was incompetent at the time of trial. Indeed, the Court finds that there is <u>no</u> cause to believe that Calloway was incompetent at the time of trial. The evidence overwhelmingly demonstrates his competence at the time of trial.

For the first time revealed in connection with this motion, we have evidence that the Court did not have when it received Defendant's post-conviction pro se letter claiming to hear voices: Defendant's own words to his family and friends throughout the course of the trial. These transcripts of his contemporaneous phone calls from prison provide an exceptionally clear view into Calloway's mental status during the trial. His telephone calls from prison reveal him to be fully aware of the trial proceedings and the strategy decisions to be made with his attorney in his defense. In his unguarded moments, Calloway was shrewd, smart, confident, strategic and manipulative.

During the trial, he demonstrated a clear understanding of the trial as it unfolded. The day before jury selection began, he explained to a friend that he had lost his suppression hearing, and that the parties were going to pick the jury the next day. (Opp'n Br. at Attach. 1, 6:28-44; Attach. 2, 3:19-22). After the jury was picked, he explained the ethnic make-up and age of the members of the jury, and also explained the process of the trial, saying that the prosecutor goes first, and defense counsel goes next. (<u>Id.</u> at Att. 3, 4:25-5:31; 5:44-6:4). During trial, Defendant told his grandmother that he decided not to testify because otherwise the jury would learn about his past criminal record. He explained: "If you was a jury and somebody . . . got locked up for

7

gun and drugs, man, he -- the prosecutor telling he got convicted for three drugs and -- for three guns and drugs, what you gonna think? I'm guilty right? You ain't going to think I'm innocent, will you?" (Id. at Att. 4, 5:28-36). He understood that he was facing a severe sentence by going to trial, saying "I could fit the criteria of a career offender and get 35 years to life." (Id. at Att. 6, 8:25-27).

Defendant also demonstrated an understanding of possible defense theories. See Leggett, 162 F.3d at 242 (affirming trial court's decision not to hold a competency hearing where defendant "manifested a working knowledge . . . of trial tactics"). He explained that his counsel had retained an expert who had finger-printed the gun he was accused of possessing, and that there were multiple prints on the gun, none of which matched his own. (Id. at Attach. 1, 5:35-6:5). He said that he believed the police officer's testimony in the suppression hearing was inconsistent with the account in his incident report. (Id. at Attach. 1, 7:11-25). He also expressed his dissatisfaction with his trial attorney, saying that he wasn't "asking the questions he supposed to be asking," and explaining his disagreements with various trial strategy decisions his attorney had made. (Id. at Attach. 5, 7:43-8:38). He said that if he got a better attorney, "the cop's gonna say the same thing, but a better lawyer be able to examine right and expose them of their lies, and he's not painting that to the jury." (Id. at Attach. 6, 3:46-4:5).

Finally, the prison phone calls demonstrate that even his claim of mental incompetence was strategically launched only after he was convicted. Within days of his conviction he called his grandmother, and said:

> I was just looking up on the computer about what they was supposed to do because of my mental health, that the judge never asked me nothing about my -- like I don't like, you feel me, nothing about my mental health to see if I was competent to stand trial and the lawyer never even produced it to the courts about that I was taking medication since 2006 and I do have a mental disorder, you know, for schizonoia-paraphrenia (phonetic) and they said that that's like -- I

8

> don't know, it was illegal, like the fact that they -- like everything that went on like, but I just gotta write -- I gotta finish writing the judge a letter and mail the judge a letter that I gotta mail it to the appellate court so, whatever, because they wasn't supposed to send me to trial without getting me evaluated for a mental health to see if I was competent to stand trial, being as though that I gotta a mental -- a disorder . . . .

(Id. at Att. 7, 8:39-9:21).[3]

The Court also has the added evidence of its own observations of Defendant during trial, in which Defendant behaved appropriately, and regularly exchanged notes and readily communicated with counsel. See Jones, 336 F.3d at 259 (stating that trial court may rely on its own experience with defendant when determining competency). There was nothing whatsoever to suggest any question about Calloway's competence during the trial.

As the Court noted in its previous Opinion, the unrefuted experts at FMC Butner found that the Defendant's "behavioral inconsistencies, inconsistency between self-report and behavior, exaggerated and atypical symptom presentation, test results, and historical information . . . most closely meets criteria for malingering." (FMC Butner Report at 21). Clearly, based on the thorough evaluation done by FMC Butner, Defendant is fabricating his psychiatric problems. Because of Defendant's inconsistent behavior, he was administered the Test of Memory Malingering ("TOMM"). Test scores on the second trial of the TOMM for individuals who are not malingering are typically very high, regardless of neurological dysfunction or psychological symptoms. (Id. at 21). According to the Report, "[a]ny score lower than 45 on the second trial or retention trial should raise concern than an individual is not putting forth maximum effort and

---

[3] Defense counsel, after reviewing the records of these phone calls, argues they indicate "he was clearly delusional prior to, during, and after trial" based on Defendant's confidence that he would be acquitted. (Reply Br. at 2-3). The Court disagrees. While Defendant may have been over-confident, this does not even remotely suggest that he was not competent. Indeed, it is evidence of why he turned down the plea offer that was made.

is likely malingering." Defendant scored a 22 on those respective trials, which was "consistent with exaggerated memory impairment." (Id. at 19.) The Report also observed that Calloway's behavior with evaluators was highly different from his behavior with other inmates, in recorded telephone calls, and with custody staff.[4] (Id. at 21.) In sum, Calloway was entirely coherent, logical and goal-directed except when he thought that it served his purposes to appear to be mentally incompetent, such as when he was being tested and evaluated by the psychologists. This further strongly supports the conclusion that Defendant was feigning his purported mental problems. The conclusions were so strong that even Defendant's own psychological expert could not refute them.

In support of his motion for a new trial on the ground of retrospective incompetency, Defendant has presented a report by Dr. Catherine M. Barber stating that it is "possible" he was incompetent at the time of trial. The report cites Defendant's medical records from 2002 through 2007 while he was incarcerated at a state prison, including entries by several mental health professionals who treated Defendant, a finding at a prison disciplinary hearing that Defendant was not competent to understand the proceedings, and a psychiatrist's note in 2006 that "[a]lthough the possibility of his having feigning symptoms to escape AdSeg cannot totally be excluded . . . he deserves treatment." (Mov. Br. Ex. A at 2-3). These records do not refute the overwhelming evidence that Mr. Calloway was competent, aware of his legal rights and the legal proceedings throughout the federal trial, and strategically feigning incompetence to serve his own goals to avoid being sentenced after his conviction and, then to try to get a new trial. The most persuasive explanation of the state prison records considered in the context of the entirety

---

[4] The stark contrast between Defendant's lucid personal communications and his feigned mental incompetence when dealing with psychologists that occurred at Butner is also revealed in the prison phone calls during the trial, further supporting the conclusions made at Butner.

10

of the evidence that this Court now has before it, is that Defendant successfully feigned his symptoms at Northern State Prison to avoid a disciplinary hearing and sanctions through the same malingering techniques he later repeated at Butner in an effort to depict himself as incompetent. The records submitted from Northern State Prison reveal that it did not apply the same range of resources to fully explore Defendant's malingering as those available at FMC Butner, which has been staffed as the most highly sophisticated federal correctional center to evaluate psychological issues.[5] Nor did an internal prison disciplinary hearing present the type of adversary proceeding in which there was an analysis of the contrast between Calloway's self-reported symptoms and his actual mental status.

After thorough consideration of all the evidence before this Court, there is no reasonable cause to believe that Defendant was incompetent at the time of his trial. This finding is separate and independent of the Court's prior finding that he is competent to proceed to sentencing.

     b. <u>Ineffective assistance of counsel claims</u>

Defendant has raised three ineffective assistance of counsel claims regarding his trial attorney's : (1) failure to request a competency evaluation; (2) asking the jury to find Defendant "guilty" in closing arguments; and (3) alleged failure to adequately counsel Defendant on the benefit of accepting the Government's plea offer.

---

[5]     In his Reply Brief, Defendant notes that the mental health professionals at FMC Butner did diagnosis him with Antisocial Personality Disorder, arguing that "[s]uch psychological disorders may very well have had an impact on Mr. Calloway's ability to truly understand and perceive the seriousness of the case against him." (Reply Br. at 5). This argument is unpersuasive. This personality disorder is very different from the type of severe mental illness that would render him incompetent to proceed to trial. See Leggett, 162 F.3d at 244 ("If the mental illness does not deprive the defendant of the ability to understand the proceedings rationally as well as factually, then the illness is irrelevant for the purposes of determining competency.") (internal citations and punctuation omitted).

While not mandatory, the Third Circuit has stated that ineffective assistance of counsel claims generally should be heard in collateral proceedings, and not in a motion for a new trial. See United States v. Kennedy, 682 F.3d 244, 250 n.3 (3d Cir. 2012) ("[C]laims of ineffective assistance of counsel typically should be asserted in collateral proceedings, not . . . in motions for a new trial."); United States v. Chorin, 322 F.3d 274, 282 n.4 (3d Cir. 2003) ("[T]his Court has expressed a preference that ineffective assistance of trial counsel claims be brought as collateral challenges under 28 U.S.C. § 2255, rather than as motions for new trials . . . .").[6]

Defendant's claims regarding his trial attorney's alleged errors substantially rest on evidence outside the record before this Court. They are better addressed in a collateral proceeding, where a full factual record can be developed as to Defendant's interactions with his trial counsel. In the interests of judicial efficiency, the Court finds that these claims will be better addressed in a collateral proceeding following sentencing and his direct appeal.

**IV.     Conclusion and Order**

The Court has fully examined Defendant's claim that there is reasonable cause to believe that he was incompetent at the time of trial and has found that there is no reasonable cause to believe that such incompetence existed.[7] To the contrary, the evidence shows that Mr. Calloway was fully aware, alert, knowledgeable, communicative with counsel, strategic about legal decisions, and shrewd about when to launch issues in order to delay his sentencing. This is not a

---

[6]     See also United States v. Williams, No. 02-935, 2006 U.S. Dist. LEXIS 40357 at *6 (D.N.J. June 16, 2006) ("Rule 33 is an inappropriate mechanism for raising Defendant's claim of ineffectiveness of counsel.").

[7]     Defendant's motion also states that it supplements Defendant's pro se motions for a new trial. [Dockets No. 39; 69]. To the extent that those motions are before this Court, they raise arguments that are largely duplicative of Defendant's counseled motion for a new trial, and are therefore addressed by this Opinion. A defendant cannot be pro se and represented by counsel simultaneously. Any arguments that counsel chose to argue to this Court are addressed.

12

close call: The evidence overwhelmingly demonstrates his competence at that time and does not present any basis for a finding of "reasonable cause to believe" that he was not competent at that time. Granting a new trial would not be in the interests of justice.

For the reasons stated above,

IT IS on this 18th day of April, 2013

**ORDERED** that Defendant's motion for a new trial is denied, without prejudice to his right to bring his ineffective assistance of counsel claims in a collateral proceeding; and

**IT IS FURTHER ORDERED** that Defendant is to proceed to sentencing on May 21, 2013 at 11:00 a.m.

/s/ Faith S. Hochberg_____

Hon. Faith S. Hochberg, U.S.D.J.